George Andrews, J.,
delivered the opinion of the Court.
*71 At the March Term, 1869, of the Criminal Court for Davidson County, an indictment was found against Zack Boyd, for murder. The indictment contained two counts; the first count charging the killing of “ one William -, man of color; and the second, charging the killing of a man of color, to the grand jurors unknown. The offense is charged to have been committed on or about the 16th September, 1865.
' To this indictment the defendant pleaded not guilty; and upon trial, the jury found him guilty of murder in the first degree, with mitigating circumstances;' and he was sentenced to imprisonment for life. The defendant moved for a new trial, which being refused, he appealed in error to this court.
The homicide is proved to have been committed in September, 1865. It is now claimed for the prisoner, that since the Act of the Legislature, passed May 26th, 1866, in regard to persons of color, there has been no law in force in this State under which the defendant could be punished for this offense, if proved to be guilty. The defendant is a man of color, and is charged as such, in the indictment; and was a free man in the month of September, 1865.
The provisions of the law applicable to this case, at the time the homicide in question was committed, are contained in the Code, and are as follows:
Section 4597. “If any person of sound memory and discretion, unlawfully kill any reasonable creature in being, and under the peace of the State, with malice aforethought, either express or implied, such person shall be guilty of murder.”
*72 Section 4598' defines the offense of murder in the first degree, and section 4599 declares that all other kinds of murder shall be deemed murder in the second degree.
Sections 4601 and 4602 declare» that the punishment of murder in the first degree, shall be death by hanging; and that of murder in the second degree, shall be imprisonment in the penitentiary.
By section 5257, where any person is convicted of a capital offense, the Court may, upon the finding of the jury that there are mitigating circumstances in the case, commute the punishment to imprisonment for life.
By sections 2625 and 2725, the crime of murder, without reference to its degree, rape upon a free white woman, and certain other offenses, were declared to be capital offenses, when committed by slaves, or by free persons of color; and to be punishable with death by tanging.
Thus the law stood at the time when this homicide was committed. On the 26th of May, 1866, the Legislature passed An Act, by section 2 of which, it was enacted that persons of color shall have the right to make and enforce contracts; to sue and be sued; to be parties, and give evidence; to inherit, and to have full and equal benefit of all laws and proceedings for the security of persons and estates; and “shall not be subject to any other or different punishment, pains, or penalties, for the commission of any act or offense, than such as are prescribed for white persons committing like acts, or offenses.”
By section 4 of the Act, it was declared, that “all *73 Acts, or parts of Acts and laws, inconsistent herewith, are hereby repealed.” This Act contained no reservation of the right to prosecute and punish offenses already committed.
The argument now made for the defendant is, that sections 2625 and 2725 of the Code, which declare that murder by a person of color shall be punished capitally, being inconsistent with the Act of 1866, which declares, that such murder shall be punished only in manner prescribed in case of a murder committed by a white person, are repealed by that Act, that the defendant cannot be punished under sections 4601-2 of the Code, because they apply only to cases of murder committed by white persons; nor under sections 2625 and 2725 oí the Code, because they are repealed by the Act of 1866; nor under the Act of 1866, because it was not in force at the time the offense was committed, and cannot now be applied to that offense.
In regard to the effect of a change in the law of the penalty upon offenses committed before such change, the decisions heretofore made in this State have adopted a different rule from that recognized in many decisions elsewhere. See cases cited in Cool. Const. Lim., 266, et seq.
The effect to be given to the Act of May, 1866, was considered by this Court in the case of Joe Wharton vs. The State: 5 Cold., 1. In that case, the prisoner was indicted for a rape committed upon a free white woman,' while he was a slave, in 1859. The penalty for thé offense, under Code, section 2625, being death. Several trials were had, and the case continued in court till af *74 ter the abolition of slavery, and after the passage of the Act of 1866; and the prisoner being finally convicted and sentenced to death, brought the case into this court, in 1867. Rape committed by a white' person was punishable only by imprisonment for a term of years.
The courts held that section 2625 of the Code, which annexes the penalty of death to the crime of rape committed by a colored man upon a free white woman, was inconsistent with the provisions of the Act of 1866, and was, therefore, as to this offense, repealed by the fourth section of that Act; that there was no law then in existence under which the prisoner could be punished for his offense, and that he must be discharged. See, also, Keith vs. The State, 5 Cold., 25; 2 Cold., 184, 201.
As to the offense for which Joe Wharton was indicted, the Act of 1866 operated as a total abolition of the penalty provided by the former law, and the substitution of another punishment, totally different in its character. The question is presented in the case now before us, in another phase.
The crime of murder was first declared to consist of two degrees in this State, by the Act of 1829, ch. 23. Slaves were expressly excepted from the operation of that Act; and it was held, under that Act, that murder committed by a slave, stood as'at'common law, and had no degrees. Free negroes, however, were not excepted from the operations of the Act; and the Code contains no provisions excepting either slaves or free negroes from the operations of the sections which declare that the crime of murder shall consist of .two degrees.
Under the Code, and prior to the Act of 1866, the *75 crime of murder committed by a free person of color, must be held to have been divisible into the first and second degrees; though as both degrees were punished capitally, the distinction was not then of practical importance.
By section 5257 of the Code, where any person is convicted of a capital offense, and the jury who convicted him state in their verdict that they are of the opinion that there are mitigating circumstances in the case, the Court may commute the punishment from death to imprisonment for life in the penitentiary. No exception is made in regard to this provision against free persons of color, and no such exception was made in the Act of 1838, eh. 29, from which this provision was taken; and the defendant in this case was undoubtedly entitled to the benefit of it prior to the Act of 1866.
The law in force at the time of the commission of the homicide involved in this case, then declared that the present defendant, if guilty of murder, either in the first or in the second degree, should suffer death by hanging; provided, that the Court, upon a verdict of mitigating circumstances by the jury, might commute the punishment to imprisonment for life.
How did the Act of 1866 change the relation of the defendant in this case, to the law? It declared, in effect, that the defendant, if found guilty of the crime of murder in the first degree, should suffer death by hanging; provided that the Court, upon the recommendation of the jury, might commute the punishment to imprisonment for life; and if found guilty of murder *76 in the second degree, should be punished by imprisonment for a term of years.
It is obvious that, for the'offense of murder in the second degree, the former penalty is abolished, and a totally different one substituted. But for the offense of murder in the first degree, of which the defendant has been convicted, no new or different punishment has been declared; no new grade of homicide has been created since his offense was committed; and his punishment has been commuted under the same law under which it might have been commuted, had the Act of 1866 not been passed.
The Code is repealed by the Act of 1866, only in the particular respects and to the extent that it conflicts with that Act.
We do not think that the defendant is, by the operation of the Act of 1866, relieved of the penalty adjudged against him.
It is objected to the indictment in this case, that the first count charges the defendant with killing one “ William, a man of color,” without setting out his surname. There is nothing in this objection. We cannot judicially know that a man must, of necessity, have two names, particularly in view of the fact of every-day knowledge, that many persons of color never had or acquired any surname. There is no evidence in the record that the deceased had any name other than William; and. we cannot see that any greater certainty in the designation of the deceased was possible: 1 Archib. Crim. Law, 81, and note.
*77 It is also objected that the indictment is defective for the reason that it charges in the first count the killing of a person named William, and in the second count the killing of a person unknown; from which it would appear that two distinct murders are charged in the same indictment. This constitutess no defect in the indictment: 1 Archb. Crim. Pr., 80, 81, and note. Whether there are more offenses than one really meant to be alleged against the defendant, or not, in theory of law each count is for a separate crime; and there are as many distinct crimes set out as there are counts: 1 Bish. Crim. Proceed., § 197. If it appear that the offenses charged in the different counts are, in fact, distinct acts of crime committed at different times, the Court may, in its discretion, for the purpose of preventing the prisoner from being prejudiced or embarrassed in his defense, direct the prosecutor to elect .which count he will proceed upon. But where the offenses charged are of the same nature and grade, and require the same judgment and punishment, an objection on account of such joinder cannot be raised for the first time, after verdict, by motion in arrest of judgment: 1 Bish. Cr. Proceed., §§ 197-204; 1 Archb. Crim. Pr., 95, and note; Wright vs. the State, 4 Hum., 194; Cash vs. the State, 16 Hum., 111; Ayrs vs. the State, 5 Cold., 26.
The evidence upon which the verdict is based is circumstantial. We do not deem that it would be particularly interesting or profitable to incorporate a detailed statement of the evidence in this opinion; but we think it amply sufficient to justify the finding of the jury; and the judgment of the Court below must be affirmed.